**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RICHARD GREEN (FINE PAINTINGS),** | **ECF CASE** |
| *Plaintiff*, | **08 CIV. 8496 (JGK)** |
| -against- | |
| **DOYLE MCCLENDON and MARY ALICE MCCLENDON,** | |
| *Defendants*, | |

<u>**DEFENDANT MARY ALICE MCCLENDON'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>
<u>**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

J. Carter Andersen (Admitted *pro hac vice*)
Michelle R. Drab (Admitted *pro hac vice*)
BUSH ROSS, P.A.
P.O. Box 3913
Tampa, Florida 33601
Tel. (813) 224-9255
Fax. (813) 223-9620

Counsel for Defendant,
Mary Alice McClendon

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES..........................................................................................ii

INTRODUCTION .......................................................................................................1

FACTS ........................................................................................................................3

ARGUMENT ..............................................................................................................6

I.   Legal Standard for a Motion to Dismiss .........................................................6

II.   The instant case should be dismissed under this Court's precedent in *Jones*.................6

III.   The Plaintiff did not intend its agreement to be binding until an invoice setting forth the final terms was prepared and signed by both parties. ....................................................8

IV.   The alleged signed writings are insufficient to satisfy the statute of frauds..............10

V.   Count II must be dismissed for failure to state a claim. ............................................15

VI.   To the extent the Court determines that the parties entered into an agreement enforceable under the statute of frauds, the terms and conditions of sale set forth on the reverse of the invoice attached to Green's complaint are binding and enforceable and the second amended complaint must be dismissed pursuant to the forum selection clause included in the invoice. ..................................................................................................18

a.   The invoice attached to Green's Second Amended Complaint is admissible to show the parties are subject to jurisdiction in England. ................................................................18

b.   Legal Standard for a Motion to Dismiss Based on a Forum Selection Clause..........18

c.   Enforceability of a Forum Selection Clause.............................................................19

d.   The Forum Selection Clause included in Green's Invoice is Mandatory and Binding against Green. ...................................................................................................................20

CONCLUSION ........................................................................................................21

CERTIFICATE OF SERVICE ..................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AFP Imaging Corp. v. Philips Medizin Systeme Unternehmensbereich der Philips*,

    1994 WL 652510 (S.D.N.Y. Nov. 17, 1994) .......................................................... 16

*Brause v. Goldman*, 10 A.D.2d 328

    (1st Dep't 1960) ............................................................................................ 8, 11, 14

*Clow Water Sys. Corp. v. NAB Constr. Corp./Schiavone Constr. Corp.*,

    697 F. Supp. 125, 125-26 (E.D.N.Y. 1988) ........................................................... 14

*Crabtree v. Elizabeth Arden Sales Corp.*,

    110 N.E. 2d 551, 554 (N.Y. 1953) ................................................... 10, 11, 12, 13

*Global Seafood Inc. v. Bantry Bay Mussels Ltd.*,

    2008 WL 474267 at *3 (D. Conn. Feb. 20, 2008) ........................................... 20, 21

*Horn & Hardart Co. v. Pillsbury Co.*,

    888 F.2d 8, 11 (2d Cir. 1989) ................................................... 10, 11, 13, 15

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors, Inc.*,

    22 F.3d 51 .......................................................................................................... 20

*Jones v. Wide World of Cars*,

    820 F. Supp. 132 (S.D.N.Y. 1993) ............................................................... 6, 7, 10

*Joseph E. Seagram & Sons, Inc. v. Shaffer*,

    310 F.2d 668, 674 (10th Cir. 1962) ...................................................................... 12

*Leeds v. Meltz*,

    85 F.3d 51, 53 (2d Cir. 1996) ................................................................................. 6

*M/S Bremen v. Zapata Off-Shore Co.*,

    407 U.S. 1 (1972) ................................................................................................. 19

*Marvin Inc. v. Albstein*,

386 F. Supp.2d 247 (S.D.N.Y. 2005) ....................................................... 15, 16, 17

*Merex A.G. v. Fairchild Weston Systems, Inc.*,

29 F. 3d 821 (2d Cir. 1994) ...................................................................... 3, 16, 17

*New Moon Shipping Co., Ltd. v. Man B&W Diesel AG*,

121 F.3d 24, 28 (2d Cir. 1997) ...................................................................... 18, 19

*Phillips v. Audio Active Ltd.*,

494 F3d 378, 383 (2d Cir. 2007) ................................................................... 19, 20

*Pickering v. American Express Travel Related Svcs. Co., Inc.*,

2001 WL 753782 *1, *4(S.D.N.Y. July 3, 2001) .................................................. 10

*Scheck v. Francis*,

260 N.E.2d 493, 494 (N.Y. 1970) ....................................................................... 8

*Sel-Leb Marketing, Inc. v. Dial Corp.*,

2002 WL 1974056, *1, *3 (S.D.N.Y. 2002) ...................................................... 6, 18

*Thompson v. Illinois Dep't of Professional Reg.*,

300 F.3d 750, (7th Cir. 2002) .................................................................... 2, 3, 6, 18

*Willmott v. Giarraputo*,

157 N.E.2d 282, (N.Y. 1959) ....................................................................... 11, 15

**Statutes**

UCC § 2-201(1) ........................................................................................... 10


**Rules**

Rule 10(c), *Federal Rules of Civil Procedure* ..................................................... 6, 18

## INTRODUCTION

Plaintiff Richard Green (Fine Paintings) ("**Green**") alleges that on or about May 14, 2007, while attending an art fair in New York City, Defendants Doyle and Mary Alice McClendon became interested in purchasing a painting (hereinafter, the "**Work**").  2d. Amd. Compl. (D.E. # 38) ¶¶ 10-11.

In its three versions of the complaint, has alleged three materially different sets of facts regarding what transpired between the parties on May 14, 2007.  In its initial complaint filed on October 3, 2008, Green alleged that an agreement occurred on May 14, 2007 but Green did not attach the May 14, 2007 invoice and made no reference at all to a written contract between the parties.  Compl. (D.E. # 1.) ¶ 11, *passim*.

In response to the Defendants' initial motions to dismiss, Green voluntarily filed its (first) amended complaint on November 21, 2008.  Amd. Compl. (filed under seal November 21, 2008 attached as Exhibit 2 to the Declaration of Ronald W. Adelman).  Green again alleged that an agreement occurred on May 14, 2007 and Green attached a one-page May 14, 2007 invoice.  Amd. Compl. ¶ 11.  Green specifically alleged that the "contract" was "memorialized in the [attached one-page May 14, 2007] invoice."  Amd. Compl. ¶ 11, 12, and Exh. A.

In response to the Defendants' motions to dismiss the amended complaint, Green filed its second amended complaint on February 6, 2008.  2d. Amd. Compl.  Green again alleged that an agreement occurred on May 14, 2007 and again attached the May 14, 2007 invoice, but Green finally attached a true and correct copy of the May 14, 2007 invoice.  *Id.* at ¶ 11, 13.  Green inasmuch as admitted that it made a material omission in the first two versions of the complaint by failing to attach the complete, two-page May 14, 2007 invoice.  *Id.* at ¶ 11, Exh. A.  The complete May 14, 2007 invoice shows that the reverse side sets forth certain "Terms and

Conditions of Sale" drafted by Green which were not attached to Green's first two versions of the complaint. *Id.*

In its second amended complaint, Green also completely reversed course on the meaning of the May 14, 2007 invoice by deleting its allegation that the "contract" was "memorialized in the invoice" (Amd. Compl. ¶ 11, 12) and replaced it with an admission that the May 14, 2007 invoice is not a legally enforceable agreement between the parties:

> The Defendants never signed the invoice.  Accordingly, there is at present no legally enforceable agreement to the printed terms and conditions contained on the reverse of the invoice.

2d. Amd. Compl. ¶ 13.

By presenting contradictory positions, Green has exposed its precarious argument that the May 14, 2007 invoice is not a binding written contract but that it is evidence of an alleged oral agreement.  Green affirmatively alleges that the Defendants' refused to sign the invoice and therefore the "terms and conditions" are not "legally enforceable." *Id.*  But Green alleges that the invoice is somehow evidence of a binding oral agreement. *Id.* at 11, 13.

By continuously transforming its core argument in response to Defendants' motions to dismiss, Green has effectively "pleaded [itself] out of court." *Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 753-54 (7th Cir. 2002) (explaining that a plaintiff who attached a job description as an exhibit to its complaint, cannot attach such a description "affirming that those were his duties, and later, after realizing the consequences, attempt to retract the exhibit").

Now that Green has admitted that the May 14, 2007 invoice is not "legally enforceable," Green alleges that an oral agreement was evidenced by three emails sent by Ms. McClendon some nine months after the alleged agreement.  2d. Amd. Compl. Exh. C, E, and F.  In those

2

emails, Ms. McClendon not only refuses to sign Green's invoice (the complete invoice), she explicitly tells Green she is unable to close any deal which was contemplated by the parties. *Id*.

Green's material omissions in its first two complaints should be telling to this Court. *See Thompson*, 300 F.3d at 753-54. Green should no more be allowed to manipulate these proceedings than it should be allowed to manipulate the Defendants into a multi-million dollar purchase to which they never assented. Accordingly and for the reason stated herein, Green's claim for breach of contract should be dismissed with prejudice.

Green's alternate count, alleging promissory estoppel, should also be dismissed with prejudice because Green has failed to allege a "clear and unambiguous promise," "detrimental reliance," or an "unconscionable injury" as required under New York law. *Merex v. Fairchild Weston Systems, Inc*. 29 F. 3d 821, 825-26 (2d Cir. 1994) (explaining that where a claim of promissory estoppel is alleged as an alternative to a breach of contract claim which is barred by the Statute of Frauds, the complainant must allege an unconscionable injury, specifically, an injury beyond that which flows naturally from the non-performance of the unenforceable agreement).

In the alternative, if the Court determines that Green has stated a claim for breach of contract, Green's complaint must be dismissed for lack of jurisdiction or for improper venue pursuant to the forum selection clause set forth in the May 14, 2007 invoice requiring all disputes to be arbitrated in London and under English law.

## ADDITIONAL FACTS

Significantly, the May 14, 2007 invoice contains merger and integration clause which states that it shall "govern the Agreement to the exclusion of any other terms and representations communicated to Buyer prior to entering this Agreement . . . ." 2d. Amd. Compl. Exh. A at § 2.1. In other words, Green admits in its complaint that on May 14, 2007, Green represented to

3

the Defendants that the invoice specifically replaced and superseded any previous oral agreement between the parties.

Thereafter, on or about July 18, 2007, the Defendants made a $500,000 deposit.[1]   2d. Amd. Compl. ¶¶ 12, 15, Exh. A.   Sometime thereafter in 2008, Green alleges that Ms. McClendon told the Plaintiff that the Defendants would be unable to pay the $3.7 million by May 12, 2008, as provided in the invoice.  2d. Amd. Compl. ¶ 17.  In a letter to the Defendants, Green agreed to accept payment by the end of July 2008 but asked the Defendants to sign an enclosed invoice confirming Green would receive payment of "$3.70 million in full and final settlement of invoice number 33190 by July 31st 2008."  2d. Amd. Compl. ¶ 18, Exh. D.  Here, Green's allegation that it requested payment and confirmation and acceptance of the May 14, 2007 invoice reinforces that there was no "legally enforceable" agreement at this time.

Furthermore, Green acknowledges that that the Defendants did not sign or confirm the invoice as requested, but rather in response, Ms. McClendon disputed the price quoted by Green, referred Green to her husband, and invited Green to "bring [the] matter to a close…without further ado."  *See* 2d. Amd. Compl.  ¶ 19, Exh. E.  Finally, Green alleges that it contacted Ms. McClendon on July 30, 2008 regarding the payment to which she responded that she would be unable to "close our deal," again referring Green to her husband.  *See* 2d. Amd. Compl. ¶ 20, Exh. F.  Instead, Ms. McClendon suggests Green "offer us something small as a token of good will" as a compromise for the $500,000.  2d Amd. Compl. Exh. F.

Green fails to allege several facts which are essential to its claim.  First and foremost, Green fails to allege the existence of a written agreement signed by the Defendants.  2d. Amd. Compl., *passim*.   Instead, Green acknowledges that its unsigned invoice is not legally

---

[1] While, in its second amended complaint, Green refers to the $500,000 as an "initial payment," Green has previously referred to the $500,000 as a "deposit" consistent with the invoice it attaches to its complaint at Exhibit A, which also refers to this $500,000 as a "deposit."

enforceable against the Defendants but suggests that the email correspondence between the parties is sufficient evidence of "a binding contract to buy the Work for $4.2 million." 2d. Amd. Compl. ¶¶ 13, 16, 20.  Notwithstanding Green's repeated assertions that the Defendants had an obligation to buy the Work for $4.2 million by either May or July 2008, Green fails to allege Ms. McClendon ever provided any written confirmation or assent to these terms. 2d. Amd. Compl, *passim*.  Instead, the Second Amended Complaint includes several emails, letters, and invoices from Green to the Defendants requesting their signature in order to confirm the terms of the alleged and agreement and to "formalise" their "arrangement," none of which were ever signed by either of the Defendants. *See* 2d. Amd. Compl., ¶ 17, Exs. A, B, D, and E.  To the extent that Green seeks to argue that the email correspondence between Green and Ms. McClendon, exchanged some nine months after the alleged agreement, is sufficient to constitute the necessary writing, this correspondence falls woefully short of the signed writing requirement under the statute of frauds. *See* 2d. Amd. Compl., ¶ 13, Exh. E.

In addition, Green fails to allege the nature or terms governing the $500,000 "deposit" paid by the McClendons, such as whether the parties agreed that the deposit would be refundable or nonrefundable.  2d. Amd. Compl., *passim*.  Moreover, Green fails to allege a single fact in support of its broad conclusion that it was damaged.  *See* 2d. Amd. Compl. ¶ 17, 21, *passim*.  To the contrary, Green's allegations suggest that it has benefitted by the fact that the deal was never concluded or "formalise[d]" between the parties because the value of the Work, which remained in Green's possession, "continued to increase through 2007 and well into 2008." 2d. Amd. Compl. ¶ 13, Exh. F.

<u>**ARGUMENT**</u>

**I. <u>Legal Standard for a Motion to Dismiss</u>**

On a motion to dismiss, the court will take all well-plead factual allegations as true, and all reasonable inferences will be drawn and viewed in a light most favorable to the plaintiffs. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The pleading standard is a liberal one, however, bald assertions and conclusions of law will not suffice. *Id*.

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the pleading consists of the pleading itself and all exhibits attached thereto. Rule 10(c), *Federal Rules of Civil Procedure* ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). To the extent that a plaintiff relies on a document attached to its complaint to form the basis of the claim, dismissal is appropriate if the document negates the claim. *See Thompson v. Illinois Dep't of Prof. Reg.*, 300 F.3d 750, 753-54 (7th Cir. 2002) (finding that exhibit attached to plaintiff's complaint to show plaintiff was demoted could be considered by the court for other purposes); *Sel-Leb Marketing, Inc. v. Dial Corp.*, No. 01 CIV. 9250, 2002 WL 1974056, *1, *3 (S.D.N.Y. 2002) ("a plaintiff's careful avoidance of certain documents in its pleading does not make those documents any less integral to the complaint").

**II. <u>The instant case should be dismissed under this Court's precedent in *Jones*.</u>**

The instant case falls squarely under this Court's precedent in *Jones v. Wide World of Cars*, 820 F. Supp. 132 (S.D.N.Y. 1993). In *Jones*, a buyer allegedly contacted seller to discuss purchasing a new Ferrari. Following their conversation, the buyer paid a $50,000 deposit to the seller and the seller prepared and sent to buyer a purchase order which stated that "THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER." *Jones*, 820 F. Supp. at 134-35. The buyer never signed the invoice and refused to follow through with the purchase. The buyer sued for return of its deposit and the seller counterclaimed for

6

repudiation of the alleged purchase contract.  *Id*. at 134.  This Court held that no signed writing existed within the meaning of § 2-201 of the New York UCC and that the $50,000 deposit paid by the buyer was not sufficient to take the agreement out of the statute of frauds pursuant to the part performance exception set forth in § 2-201(3).  This Court explained that "ordinary public expectation would be flouted by a ruling that one who puts money down becomes committed to a transaction for which the details have yet to established."  *Id*. at 137.  This Court refused to allow the seller to rely on actions taken by the buyer to constitute the part performance required under § 2-201(3):

> A consumer putting down a payment is making a monetary sacrifice and showing good faith seriousness to encourage the seller to take the potential sale seriously and to hold the goods.  To find that the down payment irrevocably commits the potential buyer when the details of the arrangement may still be shrouded in mystery would be contrary to ordinary experience and elementary fairness.  A consumer down payment on a product not specially made for the buyer, standing alone, is entirely consistent with an articulated or implicit agreement that it would serve as "earnest money" to be refunded if the transaction was called off.  It and [sic] cannot do duty in lieu of a writing to establish a binding purchase and sale contract.

*Id*. at 137 (internal citations omitted).

The situation described in *Jones* is nearly identical to the situation in the instant case, but for the fact that the instant case deals with the sale of a painting while *Jones* dealt with the sale of a car.  Plaintiff alleges the parties engaged in a verbal discussion about purchasing the Work, following which the McClendons paid a $500,000 deposit to Green.  Green prepared an invoice setting forth its understanding of the alleged agreement and including certain "TERMS AND CONDITIONS OF SALE" set forth on the reverse of the agreement.  These terms and conditions permitted modification of the agreement only by signed writing.  2d. Amd. Compl. Exh. A, ¶ 8.6.

> 8.6    No amendment, modification, waiver of or variation to the Invoice or the Agreement shall be binding unless agreed in writing and signed by an authorized representative of the Buyer and Seller.

The face of the agreement required the signatures of both parties and was signed by Green.  *See* 2d. Amd. Compl.  Exh. A.  Green sent the invoice to the McClendons and requested their signature on multiple occasions.  Green acknowledges the McClendons never signed the invoice and that the invoice therefore cannot constitute an agreement binding on the McClendons.  2d. Amd. Compl.  ¶ 13.  Since the unsigned invoice, like the purchase order in *Jones*, is insufficient to create a binding agreement, and the deposit also fails to take this case out of the statute of frauds, Green's claim for breach of contract must be dismissed.

### III. <u>The Plaintiff did not intend its agreement to be binding until an invoice setting forth the final terms was prepared and signed by both parties.</u>

The emails now alleged by Green to evidence the alleged agreement fail to meet the requirements of the statute of frauds because the parties never intended to conclude their agreement absent a complete and final signed invoice.

It is well settled that, if the parties to an agreement do not intend the agreement to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed.  *Scheck v. Francis*, 260 N.E.2d 493, 494 (N.Y. 1970); *Brause v. Goldman*, 10 A.D.2d 328, 332 (1st Dep't 1960) ("when the parties have clearly expressed an intention not to be bound until their preliminary negotiations have culminated in the execution of a formal contract, they cannot be held until that event occurred.  The necessary finality of assent is lacking").  In *Scheck*, plaintiff sued defendant for breach of an alleged employment agreement.  *Scheck*, 260 N.E.2d at 493-94.  The plaintiff argued that the agreement prepared by defendant's attorney after their final negotiation session, combined with the attorney's letter requesting the plaintiff to sign the agreement and have the defendant sign, constituted a signed writing sufficient to meet the requirements of the statute of frauds, even though the defendant never signed the agreement.  *Id.*  The court disagreed.  Finding

it "quite clear…that the agreements were to take effect only after both parties had signed them," the court ruled that both parties had the option to decline to go through with the deal before signing the agreement and, since the defendant never signed, the agreement was not enforceable. *Id*. at 494-95.

In the instant case, both parties expected that any agreement between them would take effect only upon the signature of both parties.  On the very same day Green alleges the parties entered into an oral agreement to purchase the Work, Green prepared an invoice which, on its face, required the signature of both parties.  *See* 2d. Amd. Compl. Exh. A.  On the reverse, the invoice contained terms and conditions that permitted modification of the agreement only by signed writing.  2d. Amd. Compl. Exh. A, ¶ 8.6.  Taken together, these provisions indicate that the parties contemplated that any agreement between the parties would need to be in writing and signed by both parties in order to be binding or enforceable.  Green specifically requested Defendants' signature on the invoice on at least four separate occasions, describing the Defendants' signature as necessary to confirm or to formalize the alleged agreement.  *See* 2d. Amd. Compl. Exh. B, Exh. D ("I…would ask you to sign the enclosed copy of this letter confirming that Richard Green will receive a payment of $3.70 million in full and final settlement of invoice number 33190"), & Exh. E ("Please could you confirm that you have sent the signed letter back to us as my family and our bankers are most anxious that we formalise this new arrangement").  Ms. McClendon, while acknowledging Green's request, declined each one. In addition, she conveys to Green her understanding that their "deal" had not been closed, which Green never disputes in its correspondence with Ms. McClendon. *See* 2d. Amd. Compl. Exh. F. Whether or not the parties entered into negotiations for the purchase and sale of the Work, these negotiations were never concluded with a signed invoice, as the parties anticipated.

Accordingly, the parties had no legally enforceable agreement and Green's claim for breach of contract must be dismissed.  *See Pickering v. American Express Travel Related Svcs. Co., Inc.*, No. 98 CIV. 8998, 2001 WL 753782 *1, *4 (S.D.N.Y. July 3, 2001) (recognizing that the parties might have a "deal" which, despite certain writings, would not be enforceable under the statute of frauds because the terms remained to be finalized and the agreement signed by the parties); *Jones v. Wide World of Cars*, 820 F. Supp. 132 (S.D.N.Y. 1993) (finding no agreement within the statute of frauds where alleged purchaser never signed purchase order prepared by seller which provided that "THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER").

**IV.** **The alleged signed writings are insufficient to satisfy the statute of frauds.**

The transaction alleged by Green involves the sale of goods for the price of $500 or more and is therefore governed by the statute of frauds set forth in § 2-201 of the New York Uniform Commercial Code ("**UCC**"), which requires "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." *See* UCC § 2-201(1).  Neither an oral agreement nor "evidence" thereof is sufficient to take the agreement out of the statute of frauds, absent the requisite signed writing.  UCC § 2-201(1).  Although the writing requirement may be satisfied by a series of signed and unsigned writings, all such writings must "clearly refer to the same subject matter or transaction."  *Crabtree v. Elizabeth Arden Sales Corp.*, 110 N.E. 2d 551, 554 (N.Y. 1953); *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 11 (2d Cir. 1989).Furthermore, the rule allowing such satisfaction contains two strict threshold requirements which are not met by the emails Green cites as "evidence" of the alleged agreement.  *Crabtree*, 110 N.E. 2d at 554; *Horn & Hardart*, 888 F.2d at 11.

First, the signed writing itself must establish a contractual relationship between the parties. *Horn & Hardart Co.*, 888 F.2d at 11 (quoting *Crabtree*, 110 N.E.2d at 554). In order to do so, the signed writing must evidence the terms of the contract and must have been signed with the intent to authenticate the information contained therein. *Crabtree*, 110 N.E.2d at 553; *Scheck*, 260 N.E.2d at 495. Second, the unsigned writing must on its face refer to the same transaction set forth in the one that was signed. *Horn & Hardart Co.*, 888 F.2d at 11. Taken together, the documents must contain all of the terms of the contract and it must be clear to the Court that defendant assented to the terms set forth in the documents. *Crabtree*, 110 N.E.2d at 553 - 54; *Willmott v. Giarraputo*, 157 N.E.2d 282, (N.Y. 1959) ("if no assent is shown, not only is the statute not satisfied, but there is no contract whatsoever"); *Brause v. Goldman*, 10 A.D.2d 328, 333-34 (1st Dep't 1960) ("[t]he absence of any of the essential elements of an agreement is a bar to its enforceability…It is not for the court to dictate such terms to the parties, for its function is to enforce agreements only if they exist, and not to create them by the imposition of such terms as it considers reasonable").

Moreover, the essential terms of the alleged agreement must be clear from the face of the documents and may neither be supplied by parol evidence nor substituted by speculation. *Horn & Hardart Co.*, 888 F.2d at 11*; Crabtree*, 110 N.E.2d at 553–54; *Willmott*, 157 N.E.2d at 283 (explaining that the terms of a mortgage or the price may be essential elements of an agreement that when "left for future negotiations, there is no contract enforcible [sic] under the statute of frauds or otherwise"). If the court must speculate as to the terms or meaning of any agreement alluded to in the signed writing, its inquiry is at an end and the contract must be deemed unenforceable. *Horn & Hardart*, 888 F.2d at 11. In *Horn & Hardart*, the district court was forced to speculate whether the defendant's reference to "our verbal agreement" in the signed

11

writing produced by the plaintiff referred to the ultimate agreement between the parties or to certain ground rules adopted to govern their conduct during negotiations. *Id.* Even though the Second Circuit found the district court's explanation of which agreement was referenced by the phrase "our verbal agreement" plausible, the court found this explanation unnecessary because "[s]peculation and hypothesis are anathema to the policy behind the statute of frauds. If the proffered writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable." *Id.* The court held the signed writing did not establish a contractual agreement and was therefore barred by the statute of frauds. *Id.*

Similarly, parol evidence is not admissible to supply any of the terms of the agreement because of the danger of fraud and perjury inherent in such testimony. *See Crabtree*, 110 N.E. 2d at 554. *See also Joseph E. Seagram & Sons, Inc. v. Shaffer,* 310 F.2d 668, 674 (10th Cir. 1962) ("Parol evidence cannot be permitted to supply an omission of any essential element of the contract…The design of the statute [of frauds] is to have written evidence of the terms thereof and any missing link which requires resort to oral evidence to connect or establish the agreement is fatal….").

In the instant case, Green submits three emails from Mrs. McClendon as evidence of an alleged oral agreement between the parties in a futile effort to meet the signed writing requirement required by the statute of frauds. Green alleges that the parties entered into an oral contract on or about May 14, 2007. 2d. Amd. Compl. ¶ 11, 25. Green does not allege that the parties executed any signed or written agreement. *See* 2d. Amd. Compl., *passim.* In fact, Green admits that the invoice it prepared on the same day as the alleged agreement and repeatedly requested Defendants to sign in order to confirm or formalize the alleged agreement was not

12

signed by the McClendons and does not constitute a binding agreement between the parties.[2]  2d. Amd. Compl.  ¶¶  11, 13, Exh. A, Exh. B Exh. D, & Exh. E.  Instead, Green alleges that certain emails sent by Ms. McClendon are "evidence" of the alleged May 14, 2007 oral agreement sufficient to satisfy the statute of frauds despite Ms. McClendon's repeated refusal to sign the invoice prepared by Green and refusal to voluntarily agree to the terms set forth therein.  2d. Amd. Compl.  ¶ 13.

Green's second amended complaint must be dismissed because Green fails to allege the existence of a signed writing required by the statute of frauds.  Green's argument that the emails are "evidence" of an earlier oral agreement is insufficient.  The statute of frauds is not satisfied by  mere  evidence  of  an  oral  agreement,  it  can  only  be  satisfied  by  a  signed  writing  or  a confluence of writings connected by subject matter and assent, which together set forth all of the elements of the agreement, leaving no term to speculation or parol.  *Horn & Hardart Co.*, 888 F.2d at 11*; Crabtree*, 110 N.E.2d at 553–55.  The three emails identified by Green fail to meet this test.  None of the emails, which were sent months after the alleged agreement, contain any specific terms nor do they contain Ms. McClendon's assent to any terms at all.  One email only mentions an "obligation" within the same sentence as "the Bonnard."  2d. Amd. Compl. Exh. C. A second email lacks any subject matter connection, merely acknowledging receipt of a FedEx

---

[2] The position Green takes in its second amended complaint, that the invoice is not a binding agreement, contradicts its previous position, taken in its Amended Complaint, that the alleged agreement was "memorialized in the invoice."  Amd. Compl. ¶ 12.  Subsequent to Green filing its Amended Complaint, defendant Mary Alice McClendon discovered the complete invoice, which included a reverse side setting forth certain "Terms and Conditions of Sale."  The reverse of the invoice was not attached to Plaintiff's Amended Complaint.  Mrs. McClendon filed the complete invoice with the Court.  With the complete invoice now before the Court, Green filed its Second Amended Complaint, revising its stance and taking the precarious position that the invoice is not binding, at least to the extent of the terms and conditions on the reverse, but is still evidence of the alleged agreement.  Green argues that despite the Defendants' refusal to sign the invoice and thereby voluntarily bind themselves to the alleged agreement, the unsigned invoice is somehow evidence of a binding agreement.   By continuously transforming its core argument in response to defendant's assertions, Green has effectively "pleaded [itself] out of court."  *Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 753-54 (7th Cir. 2002) (explaining that a plaintiff who attached a job description as an exhibit to its complaint, cannot attach such a description "affirming that those were his duties, and later, after realizing the consequences, attempt to retract the exhibit").

envelope and referring to "the matter," but failing to mention the Bonnard or even refer to a painting. 2d. Amd. Compl. Exh. E. Moreover, instead of showing any assent to any agreement, this second email actually shows a lack of assent with regard to the "selling price." 2d. Amd. Compl. Exh. E. The third email, while mentioning "the Bonnard," again shows a lack of agreement and further shows an unconcluded agreement. 2d. Amd. Compl. Exh. F. In this email, Ms. McClendon expresses her understanding that the deal had yet to conclude. *See* 2d. Amd. Compl. Exh. F ("I would close our deal if I did"). Contrary to Green's allegations, this email even suggests that Ms. McClendon believed the $500,000 deposit to be refundable. *See* 2d. Amd. Compl. Exh. F (suggesting a compromise for the $500,000 deposit).

These emails, at most, are merely communications about a proposed sale of the Work. They are neither negotiations about the purchase nor evidence of Ms. McClendon's assent to the sale of the Work on any agreed terms. In none of the emails does Ms. McClendon commit to buying the Work for $4.2 million or any other amount. Not only are these basic terms and Ms. McClendon's assent missing, but so are other terms alleged by Green, such as the terms of the deposit and whether it was refundable, the date of the sale or date payment would be due, and the date of delivery. *Compare Clow Water Sys. Corp. v. NAB Constr. Corp./Schiavone Constr. Corp.*, 697 F. Supp. 125, 125-26 (E.D.N.Y. 1988) (finding signed writing requirement met where defendant prepared a detailed invoice and sent a letter to plaintiff instructing it to release the items indicated on the invoice, citing the invoice number). To the extent Green might seek to rely on its own invoice to supply any of the missing terms, such reliance is inappropriate to an inquiry under the statute of frauds and even more so where, as here, the plaintiff has alleged that the terms of said invoice are *not binding*. *See Brause v. Goldman*, 10 A.D.2d 328, 335 (1st Dep't 1960) (distinguishing the *Crabtree* as relying on documents prepared by the defendant and

refusing to accept unsigned lease prepared by plaintiff as evidence of an agreement within the statute of frauds).

At best, the writings put forth by Green as evidence of the alleged contract show that the parties may have entered into negotiations for the purchase of a Bonnard painting for some unspecified price, paid a $500,000 earnest money deposit and sought to close the deal at some point in the future.[3]  Without relying on Green's allegations or documents prepared by Green, or admitting parol evidence and testimony of the parties, the terms of the agreement alleged by Green cannot be found in the signed writings offered by Green.  *See Horn & Hardart*, 888 F.2d at 11 (refusing to permit parol evidence of the terms of the alleged agreement and cautioning that "[i]f the proffered writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable").  More importantly, the Defendants' assent to the alleged agreement is noticeably and fatally lacking.  *See Willmott*, 157 N.E.2d at 283 ("if no assent is shown, not only is the statute [of frauds] not satisfied, but there is no contract whatsoever").

### V.  Count II must be dismissed for failure to state a claim.

Under New York law, a plaintiff must plead and prove three elements to sustain a claim of promissory estoppel to enforce an agreement otherwise barred by the statute of frauds: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party.  *Marvin Inc. v. Albstein*, 386 F. Supp.2d 247, 253-54 (S.D.N.Y. 2005).  Since New York is averse to circumventing the statute of frauds, a claim for promissory estoppel may not be maintained where the alternative claim for breach of contract is barred by the statute of frauds unless the circumstances make it unconscionable to deny the

---

[3] Curiously, despite its argument that it had a binding, irrevocable contract with the McClendons for sale of the Work for $4.2 million, Green never relinquished possession of the Work.

promise upon which the plaintiff relied.  *Id.; AFP Imaging Corp. v. Philips Medizin Systeme Unternehmensbereich der Philips*, No. 92 CIV. 6211, 1994 WL 652510, *1, *9 (S.D.N.Y. Nov. 17, 1994).  To invoke the power that equity possesses to trump the statute of frauds, the unconscionable injury must be one beyond that which flows naturally from a breach of the unenforceable agreement.  *Marvin,* 386 F.Supp.2d. at 253-54; *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F. 3d 821, 825-26 (2d Cir. 1994).

Green fails to state a claim for promissory estoppel because it fails to allege a clear and unambiguous promise, reasonable and foreseeable reliance, and an unconscionable injury or, in fact, any injury.  Green claims that the Defendants promised in May 2008 to "pay the outstanding balance owed for the Work by the end of July 2008."  2d. Amd. Compl. ¶ 29.  Yet, the complaint contradicts that claim, alleging that Ms. McClendon disputed the amount owed and refused to sign a letter in which Green requests her signature "confirming that Richard Green will receive a payment of $3.70$^4$ million in full and final settlement of invoice number 33190 by July 31st 2008."  *See* 2d. Amd. Compl.  Exh. D & E.  Instead, in an email to Green on May 20, 2008 ("**May 20th email**"), Ms. McClendon tells Green to "bring this matter to a close…without further ado."  2d. Amd. Compl.  Exh. E.  Not only does Green's complaint dispute the existence of any promise, much less a "clear and unambiguous one," it also shows that Green's decision to detrimentally rely on the alleged promise was unreasonable, unforeseeable, and entirely unilateral.   If Green felt it necessary to avoid potential injury from the art market it claims was then in decline, Green could have done so without further obligation to Ms. McClendon.

Green also has failed to properly allege that it was damaged in reliance on Defendants' alleged promise.   Green alleges that it detrimentally relied on Defendants' alleged promise

---

$^4$ As Ms. McClendon mentioned in her email, the letter attached to the Complaint as Exhibit D initially quoted a price of $3.7 million in one place and $3.75 million in another, within the same document.  The letter which is attached to Plaintiff's complaint has on its face been edited to alter the "$3.75 million" to "$3.70 million."

because "it continued to hold the Work for Defendants" despite "an art market that was in decline." 2d. Amd. Compl. ¶ 30.  As discussed above, Green's decision to hold the Work was uncalled for given Ms. McClendon's May 20th email.  Moreover, Green has not alleged that it sold the Work at a loss; therefore, it has not alleged any damages whatsoever.  *See* 2d. Amd. Compl., *passim.*

Even if Green has sufficiently alleged damages generally, Green has failed to allege the required unconscionable injury necessary to state a claim for promissory estoppel where the claim for breach of contract is barred by the statute of frauds.  *Marvin,* 386 F.Supp.2d. at 253-54; *Merex*, 29 F. 3d at 825-26.  Whether Green alleges the underlying promise was based on the alleged agreement for purchase and sale of the Work, or on the Defendants' alleged modification to the agreement and alleged promise to pay by July 2008 instead of May 2008, the underlying promise alleged arises from the agreement which is barred by the statute of frauds, as set forth herein, and Green must allege an unconscionable injury in order to state a claim for promissory estoppel.  Since Green failed to allege an unconscionable injury, Green failed to state a claim for promissory estoppel and its claim must be dismissed.

Count II of Green's complaint alleging promissory estoppel must be dismissed for failure to allege a clear and unambiguous promise, reasonable and detrimental reliance, and an unconscionable injury.

17

**VI.** **To the extent the Court determines that the parties entered into an agreement enforceable under the statute of frauds, the terms and conditions of sale set forth on the reverse of the invoice attached to Green's complaint are binding and enforceable and the second amended complaint must be dismissed pursuant to the forum selection clause included in the invoice.**

    **a.** **The invoice attached to Green's Second Amended Complaint is admissible to show the parties are subject to jurisdiction in England.**

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, a pleading consists of the pleading itself and all exhibits attached thereto.  Rule 10(c), *Federal Rules of Civil Procedure* ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").  To the extent that a plaintiff relies on a document attached to its complaint to form the basis of the claim, dismissal is appropriate if the document negates the claim.  *See Thompson*, 300 F.3d at 753-54 (finding that exhibit attached to plaintiff's complaint to show plaintiff was demoted could be considered by the court for other purposes); *Sel-Leb Marketing, Inc. v. Dial Corp.*, 2002 WL 1974056, *1, *3 (S.D.N.Y. 2002) ("a plaintiff's careful avoidance of certain documents in its pleading does not make those documents any less integral to the complaint").  Accordingly, to the extent the Court determines that an agreement exists between the parties as evidenced by the invoice attached to Green's Second Amended Complaint, the terms and conditions on the reverse of the invoice, including the forum selection clause, are similarly binding and enforceable.

    **b.  Legal Standard for a Motion to Dismiss Based on a Forum Selection Clause**

The law is unclear whether a motion to dismiss based on a forum selection clause is procedurally a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a 12(b)(3) motion to dismiss for improper venue, or "motion to decline jurisdiction."  *New Moon Shipping Co., Ltd. v. Man B&W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997).  The courts place the burden on the plaintiff, who brought suit in a forum other than the one designated by the forum selection clause, to make a "strong showing" in order to overcome the presumption of enforceability, a

burden analogous to the imposed on a plaintiff to prove that the federal court has subject matter jurisdiction or personal jurisdiction. *Id*. at 29 (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972)).

At the initial stage of litigation, however, the party seeking to establish jurisdiction need only make a *prima facie* showing to support its venue choice. *New Moon*, 121 F.3d at 29. When analyzing this preliminary showing, the facts must be viewed in the light most favorable to the plaintiff. *Id*.

### c. Enforceability of a Forum Selection Clause

Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis. *Phillips v. Audio Active Ltd*., 494 F3d 378, 383 (2d Cir. 2007). The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. *Id*. The second step requires the court to classify the clause as mandatory or permissive. *Id*. The third step asks whether the claims and parties involved in the suit are subject to the forum selection clause. *Id*. Finally, if these first three tests are met, the court must ascertain whether the resisting party has rebutted the presumption of enforceability by making a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id*. at 383-84 (citing *M/S Bremen*, 407 U.S. at 15).

Whether a forum selection clause is mandatory or permissive is determined based on ordinary contract interpretation and the language of the contract. *Phillips*, 494 F.3d at 386. A permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate. *Id*. A mandatory clause, on the other hand, confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language. *Id*. (finding that a clause mandating that "any legal proceedings that may arise out of [the agreement] are to be brought in England" constituted a mandatory forum

selection  clause because the use of the phrase "are to be brought" established an obligatory venue).  *Compare John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors, Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994)  (finding that phrase "[a]ny dispute…shall come within the jurisdiction of the…Greek Courts" was merely permissive).

### d. The Forum Selection Clause included in Green's Invoice is Mandatory and Binding against Green.

In the instant case, the forum selection clause is enforceable under the four-part test set out in *Phillips* and *M/S Bremen*.  First, since the forum selection clause at issue is contained within an invoice which Green alleges as evidence of the parties' alleged agreement and which was, in fact, created by Green, the clause was not only communicated to Green, it was actually communicated *by* Green.  Secondly, the language of the clause is mandatory because the clause provides that parties to the invoice "agree to submit to the *exclusive* jurisdiction of the English Courts."  *See* 2d. Amd. Compl., Exh. A (emphasis added); *see Phillips*, 494 F.3d at 386 (finding a forum selection clause conferring exclusive jurisdiction to be mandatory).  The third test asks whether the claims and parties are subject to the forum selection clause.  Since Green both created and signed the complete invoice, Green is subject to the forum selection clause.  Since Green alleges the Defendants breached the agreement evidenced by the invoice, its claim relates to "[t]he Agreement and all rights and obligations of the Buyer and Seller under it" and is thus subject to the forum selection clause.  *See* 2d. Amd. Compl., Exh. A, § 8.8; *see Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, No. 3:07 CV 476, 2008 WL 474267 at *3 (D. Conn. Feb. 20, 2008) (dismissing for improper venue pursuant to forum selection clause in alleged contract although defendant did not sign the alleged contract and defendant argued the alleged contract was not binding on it).

In *Global Seafood,* the court addressed a case factually similar to the instant case, concluded that the forum selection clause was enforceable, and dismissed the case. *Global Seafood*, 2008 WL 474267 at *1. Plaintiff Global Seafood, Inc. ("Global Seafood") had sued Bantry Bay Mussels ("BBM") alleging that BBM breached a contract with Global Seafood to use Global Seafood as its exclusive U.S. Marketing agent. *Id.* BBM disputed the existence of such an agreement and moved to dismiss for, *inter alia*, lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. *Id.* Although BBM disagreed that the parties had entered into an agreement, BBM argued that the court should enforce the forum selection clause in the agreement alleged by Global Seafood. *Id.* The court held that it was proper for BBM to argue both that the agreement did not exist and even so, if the plaintiff alleged that the contract did exist, the forum selection clause within the agreement should be enforced. *Id.* at *1, n.2. The court reasoned that the forum selection clause in the alleged agreement, providing that the agreement was "governed by Irish Law and Irish Courts," meant that the Irish Courts were not only empowered to hear the disputes arising out of the alleged agreement, but in fact had "dominion over the relationship set forth in the agreement." *Id.* at *3. The court held that the forum selection clause was mandatory and enforceable and dismissed the action for improper venue. *Id.*

Accordingly, unless Green could overcome the unlikely hurdle of making a strong showing that enforcement of a forum selection clause *in its own invoice* "would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," Green's amended complaint must be dismissed for improper venue.

## CONCLUSION

Because this court's precedent in *Jones* and the statute of frauds bars Green's claim for breach of contract and because Green failed to state a claim for promissory estoppel, Green's

complaint must be dismissed with prejudice. In the alternative, if the Court determines that Green has stated a claim for breach of an agreement pursuant to the terms set forth in the invoice attached the complaint, Green's complaint must be dismissed for lack of jurisdiction or for improper venue pursuant to the forum selection clause set forth in the invoice required all disputes to be arbitrated in London and under English law.

Dated: February 20, 2009

  /s/ J. Carter Andersen
J. Carter Andersen (Admitted *pro hac vice*)
Florida Bar No. 0143626
Michelle R. Drab (Admitted *pro hac vice*)
Florida Bar No. 0036993
BUSH ROSS, P.A.
P.O. Box 3913
Tampa, Florida 33601
(813) 224-9255
(813) 223-9620 - Fax
*Attorneys for Defendant,*
*Mary Alice McClendon*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of February, 2009, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law in Support Thereof has been furnished by the District Court's ECF electronic filing system to the following:

| | |
|---|---|
| John R. Cahill, Esq. | C. Bryant Boydstun, Jr. |
| Ronald W. Adelman, Esq. | Fisher & Sauls, P.A. |
| Lynn & Cahill, LLP | 100 Second Avenue South, Ste. 701 |
| 58 West 40th Street | St. Petersburg, FL 33701 |
| New York, NY 10018 | Attorneys for Defendant, |
| Attorneys for Plaintiff, | Doyle McClendon |
| Richard Green (Fine Paintings) | |

  /s/ J. Carter Andersen
ATTORNEY