```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

RICHARD GREEN (FINE PAINTINGS),

                    Plaintiff,              08 Civ. 8496 (JGK)

          - against -                       AMENDED MEMORANDUM
                                            OPINION AND ORDER
DOYLE MCCLENDON AND MARY ALICE
MCCLENDON,

                    Defendants.
─────────────────────────────────────────
```

JOHN G. KOELTL, District Judge:

Richard Green (Fine Paintings) ("Green" or "the plaintiff") is an art dealer who offered a painting by Pierre Bonnard ("the painting") for sale at the 2007 International Fine Art Fair in New York.  Green alleges that it entered into an agreement to sell the painting to Doyle ("Mr. McClendon") and Mary Alice McClendon ("Ms. McClendon") (collectively, "the McClendons") when the McClendons visited his booth at the Fair. It is undisputed that the McClendons paid Green $500,000 towards the agreed upon purchase price of $4.2 million, with the balance due in a year.  Jonathan Green agreed to deliver the painting to the McClendons' Florida home once payment was complete.  The McClendons have subsequently divorced, and have not paid the remainder of the balance on the painting.  Green retains possession of the painting at this time.

Green brought this action seeking the full price of the painting.  Ms. McClendon filed a motion to dismiss, arguing

among other things that the alleged contract was merely an oral agreement and not enforceable under the Statute of Frauds.  The Court denied the motion to dismiss, finding among other things that three emails between Green and Ms. McClendon, taken together, were a writing sufficient to meet the requirements of the Statute of Frauds.

Mr. McClendon recently died, and Green decided not to pursue this action against any successor to Mr. McClendon and to proceed solely against Ms. McClendon.  Green and Ms. McClendon had previously made cross-motions for summary judgment that were withdrawn upon Mr. McClendon's death and have now been reinitiated.  Green now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Ms. McClendon cross move for summary judgment.

I.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v.

2

Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Robins v. NYC Bd. of Educ., No. 07 Civ. 3599, 2010 WL 2507047, at *1 (S.D.N.Y. June 21, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source

from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Robins, 2010 WL 2507047, at *1.

## II.

The following facts are undisputed unless otherwise noted.

The McClendons are sophisticated art collectors who have both served on the boards of various museums and have together purchased more than 50 works of art worth over $10 million. (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") ¶¶ 5-12, Oct. 23, 2009; Def. Mary Alice McClendon's Resp. to Pl.'s Local Civil Rule 56.1 Statement of Facts ("Def.'s 56.1 Stmt.") ¶¶ 5-12, Nov. 20, 2009.)  When purchasing art, the McClendons would sometimes make an initial payment followed by a second payment of the

remaining balance they owed for the work.  (Pl.'s 56.1 Stmt. ¶ 13, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 13, Nov. 20, 2009.)  Ms. McClendon could not recall an instance when the couple signed papers at the time of an art purchase (Pl.'s 56.1 Stmt. ¶ 14, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 14, Nov. 20, 2009), although she did produce a handful of invoices signed by Mr. McClendon.  (Drab Decl. Ex. A, Nov. 20, 2009.)

Green, headquartered in London, regularly displays and sells artwork in various locations.  (Pl.'s 56.1 Stmt. ¶ 15, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 15, Nov. 20, 2009.)  The plaintiff displayed the painting at issue here, an 1892 Pierre Bonnard painting.  The painting had been purchased in November 2006 by Jonathan Green for $3,712,000.  (Pl.'s 56.1 Stmt. ¶¶ 15-16, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 15-16, Nov. 20, 2009.)

On May 12, 2007 the McClendons visited Green's booth at the Fine Art Fair and expressed their interest in the painting to David Green, who told them about the history of the work and allowed them to inspect it with an ultraviolet light.  (Pl.'s 56.1 Stmt. ¶¶ 18-21, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 18-21, Nov. 20, 2009.)  David Green introduced the McClendons to Jonathan Green, and they told him that they would be "delighted" to buy the painting for $4.2 million.  (Pl.'s 56.1 Stmt. ¶¶ 22-24, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 22-24, Nov. 20, 2009.)

5

The parties agree that Mr. McClendon wired $500,000 to the plaintiff in July 2007 and that the balance of the purchased price, $3.7 million, was due on May 12, 2008.  (Pl.'s 56.1 Stmt. ¶¶ 25-27, 34, 42, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 25-27, 34, 42, Nov. 20, 2009.)  Ms. McClendon later testified that this was a "firm agreement" to "purchase the painting after a year." (Pl.'s 56.1 Stmt. ¶ 70, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 70, Nov. 20, 2009; Adelman Decl. Ex. B at 10-11, Oct. 23, 2009.)  A Green employee then placed a red dot on the caption next to the painting, signifying that the work had been sold.  (Pl.'s 56.1 Stmt. ¶ 28, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 28, Nov. 20, 2009.)  The plaintiff argues that the $500,000 payment was the first instalment of the purchase price, but Ms. McClendon now argue that the payment was merely to hold the painting for a year but not a firm commitment to purchase the painting at the end of that period.  (Pl.'s 56.1 Stmt. ¶¶ 25, 29, 43-44, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 25, 29, 43-44, Nov. 20, 2009.)

Green was to deliver the painting to the McClendons' Florida home after the balance was paid in full, but the painting was never shipped to Florida because the balance was never paid.  (Pl.'s 56.1 Stmt. ¶¶ 31-32, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 31-32, Nov. 20, 2009.)

On May 13, 2007 Green delivered an envelope to the McClendons' hotel in New York containing a description of the

6

work and a cover letter signed by David Green congratulating the defendants on "the purchase of the painting," "confirm[ing] the purchase price of $4,200,000," referring to the $500,000 payment as a "deposit" with the balance due on May 12, 2008, and confirming that the painting would be held in Green's London headquarters until the balance was paid and would then be delivered to the McClendons' home in Florida.  (Pl.'s 56.1 Stmt. ¶ 34, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 34, Nov. 20, 2009; Adelman Decl. Ex. L, Oct. 23, 2009.)

Green subsequently sent an invoice to the McClendons confirming the transaction and confirming receipt of the $500,000 payment.  (Pl.'s 56.1 Stmt. ¶ 37, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 37, Nov. 20, 2009; Adelman Decl. Ex. M, Oct. 23, 2009.)  The McClendons did not object to any of the statements in these documents.  (Pl.'s 56.1 Stmt. ¶¶ 35-37, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 35-37, Nov. 20, 2009.)

Ms. McClendon and a friend had lunch with Jonathan and Matthew Green in London in May 2007, when Ms. McClendon made a statement confirming that she had told her friend that she had purchased the painting.  (Pl.'s 56.1 Stmt. ¶¶ 39-41, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 39-41, Nov. 20, 2009.)

In an email dated Feb. 5, 2008, Ms. McClendon told Jonathan Green that she could not consider purchasing another painting from Green "when [the McClendons] have not yet met our

7

obligation to [Green] after purchasing the Bonnard.  In these money times I think it foolish to go into debt to Green's further."  (Pl.'s 56.1 Stmt. ¶¶ 45-47, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 45-47, Nov. 20, 2009; Adelman Decl. Ex. Q, Oct. 23, 2009.)

In an April 18, 2008 letter, which received no response from the defendants, Jonathan Green reminded the McClendons of the outstanding balance on the painting and confirmed that Green would deliver the painting to Florida once the balance was paid in full.  (Pl.'s 56.1 Stmt. ¶¶ 48-51, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 48-51, Nov. 20, 2009; Adelman Decl. Ex. R, Oct. 23, 2009.)

Ms. McClendon attended the 2008 Fine Art Fair on or about May 12, 2008 and discussed with Jonathan Green the possibility of obtaining an extension of time to pay the balance for the painting, and indicated that she may not be able to pay the balance.  (Pl.'s 56.1 Stmt. ¶¶ 52-56, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 52-56, Nov. 20, 2009.)  By letter dated May 16, 2008, Jonathan Green confirmed an extension of time until July 31, 2008, although Ms. McClendon disputes that she agreed to pay the balance.  (Pl.'s 56.1 Stmt. ¶¶ 57-58, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 57-58, Nov. 20, 2009; Adelman Decl. Ex. S, Oct. 23, 2009.)  Ms. McClendon replied by email on May 20, 2008 questioning the amount of the remaining balance, an error she

later corrected, and telling Green that "[i]f you feel you must bring this matter to a close then do so without further ado." (Pl.'s 56.1 Stmt. ¶ 58, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 58, Nov. 20, 2009; Adelman Decl. Ex. T, Oct. 23, 2009.)

On July 30, 2008, Jonathan Green emailed Ms. McClendon requesting payment. (Pl.'s 56.1 Stmt. ¶ 59, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 59, Nov. 20, 2009; Adelman Decl. Ex. U, Oct. 23, 2009.) Ms. McClendon's response, dated August 1, 2008, informed Green that the McClendons were separated, indicated that Mr. McClendon was supposed to contact Green regarding a further extension of time, and stated that Ms. McClendon would "close our deal" if she had $4 million. (Pl.'s 56.1 Stmt. ¶¶ 60-61, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 60-61, Nov. 20, 2009; Adelman Decl. Ex. U, Oct. 23, 2009.) Ms. McClendon then suggested a "compromise for the $500,000[] we have paid in that [Green] offer [the McClendons] something small as a token of good will." (Pl.'s 56.1 Stmt. ¶ 59-61, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶ 59-61, Nov. 20, 2009; Adelman Decl. Ex. U, Oct. 23, 2009.) In a subsequent phone call, Mr. McClendon informed Green that he did not have the money owed and that Green would have to sue to obtain it. (Pl.'s 56.1 Stmt. ¶¶ 62-63, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 62-63, Nov. 20, 2009.)

Green attempted to sell the painting to another buyer, but by that time world financial events lowered the estimated price

of the painting.  (Pl.'s 56.1 Stmt. ¶¶ 64-66, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 64-66, Nov. 20, 2009.)

Ms. McClendon commenced divorce proceedings in June 2008, and the McClendons were divorced in early 2009.  (Pl.'s 56.1 Stmt. ¶¶ 1-2, Oct. 23, 2009; Def.'s 56.1 Stmt. ¶¶ 1-2, Nov. 20, 2009.)

At a hearing on August 13, 2009, the Court denied a motion to dismiss the amended complaint.  The Court found, among other things, that the February 5, 2008, May 20, 2008, and August 1, 2008 emails, taken together, "are sufficient to reflect the existence of the alleged contract and satisfy the [Uniform Commercial Code ("UCC")] Statute of Frauds."  (Tr. 36:22-25.)  The Court also found that the claims are not barred by the Statute of Frauds pursuant to the partial performance exception of section 2-201(3)(c) of the UCC.  (Tr. 38:19-39:1.)

The plaintiff now moves for summary judgment on the breach of contract claim under the UCC pursuant to Federal Rule of Civil Procedure 56, seeking the remainder of the price of the painting.  Ms. McClendon opposes and cross moves for summary judgment dismissing the breach of contract and promissory estoppel claims.

**III.**

The plaintiff is entitled to summary judgment for the price of the painting as determined by the contract.  The evidence is clear that the parties entered into an agreement whereby the plaintiff would sell the painting to the McClendons for $4.2 million.  The McClendons in fact paid $500,000, but never paid the remainder of the purchase price.[1]

Under New York law, the determination whether a written contract is ambiguous and the interpretation of an unambiguous contract is a question of law for the court to decide.  See JA Apparel Corp. v. Abboud, 568 F.3d 390, 396-97 (2d Cir. 2009). Whether a contract is ambiguous "is determined by looking within the four corners of the document, not to outside sources."  Id. at 396 (internal quotation marks omitted).  Summary judgment to recover the price of the goods contracted for sale pursuant to section 2-709 of the UCC is appropriate when the plaintiff shows that "1) [it] had a contract; 2) the buyer failed to pay the purchase price; and 3) the buyer accepted the goods."  Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246, 272 (S.D.N.Y. 2002) (internal quotation marks omitted). There is no dispute that the McClendons failed to pay the full

---

[1]  Ms. McClendon has not sought to assert any defense to her liability under the contract based on Mr. McClendon's death.

purchase price of the painting. Ms. McClendon argues that summary judgment is not appropriate because there was no unambiguous contract, and the painting was not delivered to her in Florida.

This Court has previously found that the emails exchanged between Ms. McClendon and Jonathan Green dated February 5, 2008, May 20, 2008, and August 1, 2008 are, taken together, a sufficient writing to satisfy the Statute of Frauds. To the extent that Ms. McClendon now raises the Statute of Frauds, there is no merit to the argument, for the reasons explained previously. The Court also previously found that even if the email exchanges were not sufficient to satisfy the Statute of Frauds, the partial performance exception under section 2-201(3)(c) of the UCC applies because the McClendons made a partial payment. Moreover, the deposition testimony of the McClendons recognizes their agreement to purchase the painting.

The essential terms of a contract for the sale of goods are "quantity, price, and time and manner of delivery." Lomaglio Assocs. Inc. v. LBK Mktg. Corp., No. 94 Civ. 3208, 1999 WL 705208, at *6 (S.D.N.Y. Sept. 10, 1999) (internal quotation marks omitted). The contract, as reflected in the email exchange between Ms. McClendon and Jonathan Green, is unambiguous with respect to each of these terms. The contract was for the sale of the painting for $4.2 million, with a

$500,000 initial payment and the balance due in a year and with delivery to occur at the McClendon's Florida home after the payment of the balance owed.

In opposing summary judgment, Ms. McClendon attempts to manufacture a dispute as to whether the parties intended the $500,000 payment to be simply a "deposit." But the terminology is not dispositive here. Whether the payment is termed a "deposit" or a first instalment, Ms. McClendon now concedes that it is not refundable. Nothing in the contract suggests that the McClendons paid the $500,000 merely to hold the painting, with an option to buy it within a year. It is clear that there was a commitment to purchase the painting for $4.2 million and that the McClendons paid $500,000, as was their practice, because they did not keep sufficient cash in their checking account to pay for the whole payment. Thus, the defendants negotiated the full payment within a year.

Ms. McClendon also argues that she believed $500,000 would be a sufficient payment to cover her obligation, possibly as liquidated damages. But there is no basis for this argument in the plain language of the contract, and it does not affect the terms of the agreement to which she did agree. The parties agreed to all of the essential terms of the agreement to purchase the painting. Ms. McClendon also does not allege that she or Mr. McClendon ever communicated to the plaintiff that the

13

$500,000 was a maximum amount of damages that the McClendons would owe, and such a term is not an essential term of the sale of the painting for $4.2 million with an initial payment of $500,000 and the balance payable within one year.  See Lomaglio Assocs., 1999 WL 705208, at *6 (stating essential terms of contract for sale of goods are "quantity, price, and time and manner of delivery.")

Therefore, the parties here did have a contact, and the buyer has failed to pay the purchase price.  If Ms. McClendon accepted the painting, then the plaintiff is entitled to the purchase price pursuant to section 2-709 of the UCC.  See Hidden Brook Air, 241 F. Supp. 2d at 272.  Under section 2-606 of the UCC, "[a]cceptance of goods occurs when the buyer . . . after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity."  The McClendons inspected the painting with an ultraviolet light at the plaintiff's booth at the time the agreement was negotiated.  The plaintiff stands willing and able to deliver the painting to Ms. McClendon as agreed once full payment is made.  A reasonable opportunity to inspect the goods is sufficient for acceptance under the UCC, even when the buyer does not yet possess the goods.  See id. at 274-75.  Therefore, Ms. McClendon accepted

14

the painting and the plaintiff is entitled to summary judgment for the agreed upon price of the painting.[2]

**IV.**

Ms. McClendon moves for summary judgment on the grounds that there was never an agreement to purchase the painting. New York law requires a meeting of the minds regarding the essential terms of a binding contract. See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007). Ms. McClendon argues that there was never a meeting of minds over an agreement to purchase the painting because she now alleges that she believed the $500,000 payment was merely to hold the painting for a year.

This argument is incorrect on the undisputed facts. Nothing in the contract suggests any ambiguity as to the essential terms of the contract. There is no indication that the parties agreed, at the time the agreement was made, to anything other than the purchase of the painting for $4.2 million, with a $500,000 initial payment and the balance due within a year.

---

[2] To the extent that Ms. McClendon objects that the complaint did not plead a claim for the price of the painting, the plaintiff is not required to plead the specific remedy in the complaint.

**V.**

Ms. McClendon also moves for summary judgment dismissing the promissory estoppel claim. A promissory estoppel claim under New York law requires "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." <u>Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.</u>, 404 F.3d 167, 172 (2d Cir. 2005).

Ms. McClendon argues that there was no oral promise as to which there was justifiable reliance. Ms. McClendon further argues that she never confirmed in writing any request for an extension of time. However, there are issues of fact regarding whether Ms. McClendon orally requested an extension of time to pay for the painting, and whether the plaintiff was harmed as a result of granting the extension and the subsequent loss in value in the painting. Therefore, Ms. McClendon is not entitle to summary judgment dismissing the promissory estoppel claim.

**CONCLUSION**

For the reasons stated above, the plaintiff's motion for summary judgment is **granted** and Ms. McClendon's motion for summary judgment is **denied**.

The Clerk is directed to close these motions.

**SO ORDERED.**

Dated:   New York, New York
         September 17, 2010

_____
John G. Koeltl
United States District Judge